UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DR. PRADEEP GOEL,<br><br>    Plaintiff,<br><br>    vs.<br><br>DR. RAJEEV SHAH, ADMINISTRATOR, UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT AND PUBLIC HEALTH INSTITUTE,<br><br>    Defendants. | Case No:  C 13-3586 SBA<br><br>**ORDER GRANTING DEFENDANT UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT'S MOTION TO DISMISS**<br><br>Docket 56 |

Plaintiff Dr. Pradeep Goel brings the instant pro se employment discrimination and retaliation action against Defendants Public Health Institute ("PHI") and the United States Agency for International Development ("USAID"), by and through its Administrator, Dr. Rajiv Shah.  Plaintiff alleges that while working for Defendants in Ghana and Nigeria, he was subjected to discrimination and retaliation on account of his race (Indian) and religion (Hindu).  The Complaint alleges federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and supplemental state law causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.  PHI was previously dismissed as a party-defendant.

The parties are presently before the Court on Defendant USAID's Motion to Dismiss for Lack of Subject Matter Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(c).  Dkt. 56.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion under Rule 12(c) and dismisses Plaintiff's claims with partial leave to amend.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY[1]

USAID is a federal agency that administers humanitarian programs in foreign countries.  From 2004 to 2006, Plaintiff, a public health physician, was assigned to work at USAID's Ghana office.  Compl. ¶ 38, Dkt. 1.  While in Ghana, Plaintiff allegedly was harassed by his supervisor, "Moscov."  Id.  Among other things, Plaintiff claims that Moscov frequently interrupted him while meditating at lunch, bothered him at home with information requests, and made disparaging remarks about a Hindu holy river.  Id. ¶¶ 38, 39, 49.

Subsequent to his Ghana assignment, Plaintiff was hired by PHI in 2006 for a two-year long position as a Senior Immunization Advisor with USAID's Global Health Fellows Program in Nigeria.  Id. ¶ 9.  PHI is a non-profit corporation that serves as a contractor to USAID.  Id.  Plaintiff and his family moved to Nigeria on February 12, 2007.  Id. ¶ 11.  Shortly after his arrival, Plaintiff allegedly began to experience discrimination on account of his race and religion.  Plaintiff claims that team leader Carla Fossand ("Fossand"), repeatedly used the term "Holy Cow," which he found offensive.  Id. ¶ 13.  Plaintiff complained to team leaders Akua Kwateng-Ado ("Ado") and Alonzo Wind ("Wind"), who did nothing in response.  Id. ¶ 15.  Ostensibly in retaliation for complaining about Fossand, Ado and Wind allegedly harassed Plaintiff and his family, gave Plaintiff a negative

---

[1] These facts are taken from the Complaint and are taken as true for purposes of the instant motion.

performance review, placed in him in an undesirable office cubicle and denied his requests for annual development benefits. Id. ¶¶ 23-30.

At the end of May 2008, Plaintiff submitted another training request as part of his development benefits. Id. ¶ 31. A couple of days later, Ado and Wind held a closed-door meeting with Plaintiff at which they informed him that his position would not be extended beyond its current term. Id. ¶ 32. They also asked Plaintiff whether he would be willing to assist with recruiting a Nigerian national for the position over the next six months. Id. Plaintiff responded that he would provide such assistance. Id.

Since he had not heard any response to his request for professional development benefits, Plaintiff attempted to follow up with Ado. Id. ¶ 33. On June 8, 2008, Ado responded by email and denied Plaintiff's training request. Id. She also confirmed that his position would not extend past the current fiscal year (meaning the end of September 2008). Id. On the same day, Plaintiff called PHI to discuss "this sudden decision by Defendants to terminate his employment prematurely." Id. ¶ 34.

On June 16, 2008, "fearing further deterioration in personal health and safety," Plaintiff requested an "early departure date" from Nigeria. Id. ¶ 35. Plaintiff and his family left Nigeria on July 8, 2008. Id. Plaintiff alleges that he has not been able to obtain work since he left Nigeria, and further alleges that Ado and Wind gave him a negative reference when called by a potential employer in November 2009. Id. ¶¶ 36, 37.

### B.  PLAINTIFF'S EEO COMPLAINT

Plaintiff initially sought EEO counseling on August 19, 2008, and his first counseling session took place on August 20, 2008. Lamond Decl. ¶ 2, Exs. A & B, Dkt. 56-1.[2] Plaintiff complained about his treatment in Nigeria, and requested reinstatement until February 9, 2009, the original termination of his assignment. Id. Though he did not

---

[2] The Court takes judicial notice of Plaintiff's initial EEO counseling report, his EEOC charge and the subsequent, related administrative rulings. These are public records the accuracy of which is not in dispute. See Fed. R. Evid. 201(b)-(d); see also Anderson v. Holder, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("[A court] may take judicial notice of records and reports of administrative bodies.") (internal quotation marks omitted)).

initially mention his treatment in Ghana, Plaintiff later informed the EEO counselor about that experience, and alleged that "USAID/Nigeria 'carried this pattern forward.'" Id. at 2.

On October 6, 2008, Plaintiff filed an EEO Complaint, alleging, inter alia, that USAID discriminated against him on account of his religion and race/ethnicity, beginning with the Ghana assignment in 2004, continuing through the Nigeria mission. Id. Ex. C. He stated that "[the] last such act of such discrimination and retaliation of June, 2008[.]" Id. Such allegedly discriminatory and retaliatory conduct consisted of terminating his contract in connection with the Nigeria mission, denying his professional development benefits and subjecting him and his family to harassment at their home and at his workplace. Id. Plaintiff averred that in order to end the harassment of his spouse, he resigned from his Nigeria assignment. Id.

On December 31, 2008, USAID dismissed Plaintiff's EEO claims based on his Ghana assignment for failure to timely initiate EEO counseling, and his Nigeria-based claims because he was employed by PHI, not USAID. Id. Ex. E. Plaintiff appealed the decision to the Equal Employment Opportunity Commission, Office of Federal Operations ("OFO"). Id. Ex. F. On August 11, 2009, the OFO affirmed the dismissal of Plaintiff's Ghana claims, but found that USAID had exercised sufficient control over the terms of Plaintiff's employment in Nigeria to qualify as a joint employer. Id. at 6. As a result, the OFO ordered USAID to process Plaintiff's claims with respect to his employment in Nigeria. Id. On September 16, 2009, USAID accepted the claims regarding his employment in Nigeria and commenced an investigation. Id. Ex. G.

On March 16, 2011, an EEO Administrative Judge granted summary judgment for USAID on the grounds that Plaintiff failed to prove his claims of discrimination and retaliation. Compl. Ex. 1. On April 11, 2011, USAID issued a Final Agency Order ("FAO") affirming the decision. Id. On May 16, 2011, Plaintiff appealed the FAO. Id. On November 7, 2012, the OFO denied Plaintiff's appeal. Id. Plaintiff alleges that he received the denial letter on November 12, 2012. Compl. ¶ 1.

**1**      C.     THE INSTANT ACTION

**2**      On February 5, 2013, Plaintiff filed the instant action against PHI and USAID

**3**  alleging claims for: (1) race and religious discrimination in violation of Title VII;

**4**  (2) wrongful termination in violation of Title VII; (3) race and religious harassment in

**5**  violation of Title VII; (4) retaliation in violation of Title VII: (5) breach of employment

**6**  contract; and (6) breach of the implied covenant of good faith and fair dealing.[3] On

**7**  February 3, 2014, the Court granted PHI's motion to dismiss, finding that Plaintiff had

**8**  failed to exhaust administrative remedies as to his Title VII claims and his state law claims

**9**  were time-barred.

**10**      Pursuant to Rule 12(b)(1) and (c), USAID now moves to dismiss the Complaint on

**11**  the grounds that Plaintiff failed to timely exhaust his Title VII claims, and that his

**12**  remaining state law contract claims are preempted by Title VII, or alternatively, the

**13**  Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109. The motion has been fully

**14**  briefed and is ripe for adjudication.

**15**  **II.**     **LEGAL STANDARD**

**16**      A.     LACK OF JURISDICTION

**17**      Rule 12(b)(1) authorizes a district court to dismiss a complaint for lack of subject

**18**  matter jurisdiction. "A jurisdictional challenge under Rule 12(b)(1) may be made either on

**19**  the face of the pleadings or by presenting extrinsic evidence." Warren v. Fox Family

**20**  Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). In a "facial" challenge, the court

**21**  assumes the truth of plaintiff's factual allegations and draws all reasonable inferences in its

**22**  favor. Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). In the case of a "speaking"

**23**  motion, the court is not restricted to the face of the pleadings and "may review any

**24**  evidence, such as affidavits and testimony, to resolve factual disputes concerning the

**25**  existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

**26**  However, a facial attack need not be converted to a speaking motion where "the additional

**27**  

**28**      [3] Plaintiff filed the action in the Central District of California, which transferred venue to this District on August 6, 2013.

facts considered by the court are contained in materials of which the court may take judicial notice." Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994) (citation omitted).  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."  Rattlesnake Coalition v. United States Envtl. Protection Agency, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).

### B. JUDGMENT ON THE PLEADINGS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog," because the motions are "functionally identical." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Thus, a Rule 12(c) motion may be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  The Court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "A judgment on the pleadings is proper if, taking all of [plaintiff]'s allegations in its pleadings as true, [defendant] is entitled to judgment as a matter of law." Compton Unified School Dist. v. Addison, 598 F.3d 1181, 1185 (9th Cir. 2010).  A court may consider "facts that 'are contained in materials of which the court may take judicial notice.'" Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir. 1999) (quoting Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994)).

## III. DISCUSSION

### A. TITLE VII CLAIMS

Title VII is the exclusive remedy for claims of employment discrimination by federal employees. See Brown v. General Servs. Admin., 425 U.S. 820, 829-35 (1976); Taylor v. Geithner, 703 F.3d 328, 333 (9th Cir. 2013).  Before bringing a Title VII claim in federal court, a federal employee must first exhaust his or her administrative remedies. B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002).  More specifically, the

employee must first initiate contact with an EEO counselor within 45 day of the date of the alleged discrimination or adverse action. See 29 C.F.R. § 1614.105(a)(1); Sommatino v. United States, 255 F.3d 704, 707-708 (9th Cir. 2001). If the matter is not resolved, the employee may submit a formal administrative complaint. See 29 C.F.R. § 1614.106. "[A]lthough the regulatory pre-filing exhaustion requirement at § 1614.105 'does not carry the full weight of statutory authority' and is not a jurisdictional prerequisite for suit in federal court, [the Ninth Circuit has] consistently held that, absent waiver, estoppel, or equitable tolling, 'failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim' in federal court." Kraus v. Presidio Trust Facilities Division/Residential Mgmt. Branch, 572 F.3d 1039, 1043 (9th Cir. 2009) (quoting Lyons v. England, 307 F.3d 1092, 1105 (9th Cir. 2002)).[4]

Here, Plaintiff alleges that he was "terminated" by Ado and Wind on or about May 30, 2008, and that Ado confirmed his separation in an email, dated June 8, 2008. Compl. ¶ 33. ("On June 08, 2008, [Ado] . . . informed PLAINTIFF that his position would not be extended beyond the fiscal year (meaning the end of September 2008."). For purposes of Title VII, a claim "accrues upon awareness of the actual injury, i.e., the adverse employment action, and not when the plaintiff suspects a legal wrong." Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1049 (9th Cir. 2008). Thus, Plaintiff's allegations establish that by no later than June 8, 2008, he was aware of his actual injury; to wit, his employment would terminate in September 2008. Under 29 C.F.R. § 1614.105(a)(1), Plaintiff had until July 23, 2008 (45 days from June 8, 2008), to contact an EEO counselor to complain of any conduct be believed to be proscribed by Title VII. However, Plaintiff waited until August 19, 2008 to contact an EEO counselor, which is 72 days after June 8, 2008, and well past the 45-day deadline under § 1614.105. See Lamond Decl. Ex. A. Accordingly, all of Plaintiff's Title VII claims are facially time-barred. Lyon

---

[4] Because compliance with § 1614.105 is not jurisdictional, Defendant's motion to dismiss the Title VII claims is construed as a motion for judgment on the pleadings under Rule 12(c), not a motion for lack of subject matter jurisdiction under Rule 12(b)(1).

v. England, 307 F.3d 1092, 1105 (9th Cir. 2002) (holding that Title VII claims arising more than 45 days prior to plaintiff's contact with an EEO counselor were time-barred).

Plaintiff does not dispute that he was aware of his injury by June 8, 2008, at the latest, and that he failed to contact an EEO counselor within 45 days of that date. Instead, Plaintiff contends that "he was not even remotely aware of the 45-day contact rule," and that even if he were, "it was beyond his health condition to do so." Opp'n at 15-16. The Court liberally construes Plaintiff's argument as one for equitable tolling under 29 C.F.R. § 1614.105(a)(2), which provides:

> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when <u>the individual shows that he or she was not notified of the time limits and was not otherwise aware of them</u>, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2) (emphasis added). Plaintiff bears the burden of pleading and proving equitable reasons to excuse his failure to comply with the 45-day requirement under this provision. See Jenkins v. Mabus, 646 F.3d 1023, 1028 (8th Cir. 2011). Such relief is to be provided "sparingly." Id.; c.f. Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992) (noting that courts have "applied [equitable tolling in Title VII actions] sparingly" and only in "extreme cases.").

In the instant case, Plaintiff asserts in his opposition that he was unaware of the 45-day deadline to meet with an EEO counselor because there was no information regarding the EEO process in his "Ghana contract" or his "PHI contract," or otherwise "displayed in the USAID missions." Opp'n at 15. Plaintiff also states that even if he knew of that deadline, his "health condition" would have prevented him from timely contacting an EEO counselor. Id. Facts supporting a claim of equitable tolling must be alleged in the pleadings. Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993) (noting that the plaintiff "must plead with particularity the circumstances" giving rise to equitable tolling in the

complaint).  As such, facts alleged for the first time in an opposition to a motion to dismiss are insufficient to preclude dismissal.  See Schneider v. Calif. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'new' allegations contained in the [plaintiff]'s opposition . . . are irrelevant for Rule 12(b)(6) purposes.").  Accordingly, Plaintiff's first through fourth claims under Title VII are subject to dismissal for failure to timely exhaust in accordance with 28 C.F.R. § 1614.105.[5]  The Court will, however, afford Plaintiff an opportunity to amend his complaint to allege, consistent with Rule 11 of the Federal Rules of Civil Procedure, facts sufficient to support equitable tolling.

### B. CONTRACT CLAIMS

Plaintiff's fifth and sixth claims for relief are state law causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, respectively.  Defendant contends that these claims are predicated upon discrimination and retaliation, and therefore, are preempted by Title VII.  Although Defendant is correct that Title VII is a federal employee's exclusive remedy for claims of employment discrimination, this contention lacks merit.  Plaintiff's contract claims allege that Defendant breached its contractual obligation that Plaintiff would not be terminated except for good cause.  Compl. at 23-28.  The pleadings further allege that Plaintiff was performing his job duties satisfactorily and that Defendant's decision to terminate him was unjustified and in bad faith.  Id.  In view these allegations, Defendant's contention that these claims are based on discrimination and retaliation is inaccurate.

---

[5] The Court agrees with USAID's contention that Plaintiff's claim that he suffered from a "health condition" is wholly conclusory and plainly insufficient to sustain a claim for equitable tolling.  USAID also argues that Plaintiff obviously became aware at some point of the need to contact an EEO counselor, and as such, he must specifically allege facts showing how he first became aware of that requirement.  USAID does not cite any authority holding that a claimant seeking the shelter of 28 C.F.R. § 1614.105(a)(2) must allege that level of detail.  Section 1614.105(a)(2) merely provides for tolling where the claimant "was not notified of the time limits and was not otherwise aware of them."  Here, Plaintiff alleges, albeit in his opposition brief, that neither PHI nor USAID notified him of the requirement to seek EEO counseling regarding any employment-related discrimination issues and that he was unaware of the 45-day deadline.  The circumstances surrounding how and when Plaintiff became aware of that obligation may be ascertained through discovery and resolved in a motion for summary judgment.

In the alternative, Defendant contends that Plaintiff's contract claims are precluded by the CDA. The CDA establishes "a comprehensive framework for resolving contract disputes between executive branch agencies and government contractors." Tritz v. U.S. Postal Serv., 721 F.3d 1133, 1139 (9th Cir. 2013) (internal quotations and citation omitted). Any contract-related claim against the federal government must be first submitted to the relevant contracting officer. Id. § 7103(a)(1). The contractor may later challenge the contracting officer's decision by appealing it to an agency board and then to the Federal Circuit, id. §§ 7104(a) & 7107(a), or by bringing an action directly in the U.S. Court of Federal Claims, id. § 7104(b). The CDA "applies to any express or implied contract . . . made by an executive agency for . . . the procurement of services," 41 U.S.C. § 7102(a)(2). When applicable, the CDA "provides the exclusive mechanism for dispute resolution." Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995).

In the instant case, the Court finds that Plaintiff's contract claims are governed by the CDA. See Flying Horse v. United States, 49 Fed. Cl. 419, 427 (Fed. Cl. 2001) (finding that under 41 U.S.C. § 7102(a)(2), employment contract claims are governed by the CDA). Plaintiff, however, has not alleged compliance with the CDA. There are no allegations that Plaintiff timely submitted a claim to the appropriate federal contracting officer. Moreover, even if Plaintiff had complied with the CDA and was denied relief by the contracting officer, Plaintiff's avenues for judicial review lie outside of this Court. See 41 U.S.C. §§ 7104, 7107(a). Accordingly, the Court finds that its lacks jurisdiction to consider Plaintiff's contract claims. See, e.g., Diversified Maint. Sys., Inc. v. United States, 110 Fed. Cl. 612, 617-18 (2013) (court had no jurisdiction to adjudicate claims under the CDA where the plaintiff had not submitted a claim to the contracting officer).[6]

---

[6] Courts are divided on whether the failure to comply with the CDA should be brought as a motion for lack of jurisdiction under Rule 12(b)(1) or a motion for failure to state a claim under Rule 12(b)(6). M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013). The Court need not reach that issue here, as the result is the same under either approach. Id.

Plaintiff does not directly respond to USAID's arguments, but instead maintains that the Court should assert supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367(a).  This contention is misplaced.  The Court's jurisdiction over Plaintiff's contract claims is determined by the CDA, not the supplemental jurisdiction statute.  See Evers v. Astrue, 536 F.3d 651, 657 (7th Cir. 2008) (noting that the CDA preempts more general jurisdictional provisions, and provide "final and exclusive resolution of all disputes arising from government contracts covered by statute.").  Accordingly, the Court dismisses Plaintiff's fifth and sixth causes of action, without prejudice.

## IV.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1.   Defendant's motion to dismiss is GRANTED.  The first through fourth claims under Title VII are DISMISSED with leave to amend to allege facts to support a claim for equitable tolling.  The fifth claim for breach of contract and sixth claim for breach of the implied covenant of good faith and fair dealing are DISMISSED without prejudice.

2.   Plaintiff shall have twenty-one (21) days from the date this Order is filed to file a First Amended Complaint, consistent with the Court's rulings.  Plaintiff is advised that any additional factual allegations set forth in his amended complaint must be made in good faith and consistent with Federal Rule of Civil Procedure 11.  In the event Plaintiff fails to timely file his amended Complaint, the action may be dismissed under Federal Rule of Civil Procedure 41(b).

3.   This Order terminates Docket No. 56.

IT IS SO ORDERED.

Dated: May 22, 2014

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge